UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| PATRICIA ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 23-129-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LIFE INSURANCE COMPANY OF | ) | **MEMORANDUM OPINION** |
| NORTH AMERICA, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Patricia Roberts commenced this civil action in the Boone Circuit Court against her former employer and insurance carrier alleging various state-law claims arising from a failure to pay benefits under a plan ostensibly governed by ERISA. She contends that the state-law claims are proper because the benefits plan at issue is a "church plan," and exempt from ERISA's requirements pursuant to 29 U.S.C. § 1003(b)(2). However, this exemption does not apply because the plan was not established or maintained by a church or association of churches and was not maintained by a principal-purpose organization. As a result of this determination, the Court concludes that Roberts' state law claims are preempted by ERISA and will be dismissed.

**I.**

Roberts worked previously at Madonna Manor, a senior living community in Villa Hills, Kentucky. During this employment, she purchased life insurance through Madonna Manor for herself and her husband, Glen Roberts. Roberts understood that each policy would pay $180,000 in the event of her or her husband's death. However, after Glen died in August

- 1 -

2022, the issuer of the policy, Life Insurance Company of North America ("LINA"), only paid

Roberts $50,000.

Roberts filed suit against Madonna Manor and LINA in the Boone Circuit Court on

August 22, 2023.  She alleges that LINA breached the parties' contract for insurance benefits

and violated Kentucky's Unfair Claims Settlement Practices Act.  Roberts also alleges that

both LINA and Madonna Manor engaged in negligence and misrepresentation and were

unjustly enriched with respect to the insurance policy.  The defendants removed the matter to

this Court on September 22, 2023, arguing that Roberts' claims are preempted by the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*.  The

defendants promptly filed motions to dismiss Roberts' claims arguing that her challenge must

be brought pursuant to ERISA's exclusive civil enforcement procedure, 29 U.S.C. § 1132.

Conversely, Roberts claims the case should be remanded to state court because the plan at

issue is exempt from ERISA under the "church-plan" exception, 29 U.S.C. § 1003(b)(2).

## II.

### A.

Congress enacted ERISA in 1974 to ensure that, if a worker has been promised a

benefit, and if the worker has fulfilled whatever conditions are required to obtain the vested

benefit, she will actually receive it.  *Hardy v. Midland Enters., Inc.*, 66 F. App'x 535, 539 (6th

Cir. 2003) (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996)).  This "comprehensive

regulation of employee welfare and pension benefit plans provides administrative oversight,

imposes criminal sanctions, and establishes a comprehensive civil enforcement scheme."  *Girl

Scouts of Middle Tenn., Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 418 (6th Cir. 2014)

(quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 650-51 (1995)).

By enacting ERISA, Congress intended to "completely preempt the area of employee benefit plans and to make regulation of employee benefit plans solely a federal concern." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991).  Thus, ERISA preempts state law claims that "relate to" any employee benefit plan governed by ERISA.  29 U.S.C. § 1144(a).  "The phrase 'relate to' is given broad meaning such that a state law cause of action is preempted if 'it has connection with or reference to that plan.'" *Cromwell*, 944 F.3d at 1275 (quoting *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 732-33 (1985)).  ERISA has exceptions, however, and certain types of plans, such as governmental and church plans, are not required to comply with its mandates.  29 U.S.C. § 1003(b).

**B.**

Federal courts possess limited jurisdiction.  A party seeking to litigate in federal court bears the burden of establishing the existence of subject matter jurisdiction by a preponderance of evidence.  *See McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936); *Gafford v. Gen. Electric Co.*, 997 F.2d 150, 158 (6th Cir. 1993).  To determine whether a plaintiff's case arises under federal law, courts ordinarily look at the face of the plaintiff's "well-pleaded complaint."  *K.B. by and through Qassis v. Methodist Healthcare-Memphis Hosps.*, 929 F.3d 795, 799 (6th Cir. 2019) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004)).

An exception to this rule exists when Congress passes a statute which is so broad that it "wholly displaces . . . state-law cause[s] of action through complete preemption."  *Id.* (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).  In such cases, state law

claims are "in reality based on federal law," and thus removable to federal court. *Id.* This is true despite the plaintiff's characterization of the claims as arising under state law. *See id.* A state-law cause of action is completely preempted by ERISA when it "duplicates, supplements, or supplants ERISA's civil enforcement remedy in § 1132(a)(1)(B)," even if the state law claim makes no explicit reference to ERISA. *Id.* (citing *Davila*, 542 U.S. at 209).

To determine whether ERISA completely preempts a state claim, the party seeking removal has the burden of showing that the plaintiff is complaining about a denial of benefits under the terms of an ERISA plan and that the plaintiff alleges the violation of a legal duty that is dependent on ERISA or an ERISA plan's terms. *Id.* If the state-law claim meets both requirements, it is "in essence" a claim "for the recovery of an ERISA plan benefit" and is subject to ERISA's enforcement scheme in federal court. *Id.* at 801.

When the party asserting federal jurisdiction finds its allegations challenged, it often must submit evidence substantiating its claims. *See Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). This Court has "wide discretion" to consider affidavits and documents "to resolve disputed jurisdictional facts." *Id.* And it may consider such evidence without converting a motion to remand into one for summary judgment. *See id.*; *Kindle v. Dyersburg Fabrics Unlimited P'Ship, I*, 2008 WL 11417498, at *2 (W.D. Tenn. Jan. 2, 2008).

**C.**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is taken as true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and determines whether

the complaint "contains enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And if the Court determines that counts of the plaintiff's complaint are preempted by ERISA, it can dismiss those counts under Rule 12(b)(6). *Lee v. Sheet Metal Workers' Nat. Pension Fund*, 697 F. Supp. 2d 781, 784 (E.D. Mich. 2010) (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 453 (6th Cir. 2003)).

## III.

The question presented here is whether ERISA's church-plan exception applies to Roberts' insurance policy.[1] If it does, ERISA does not apply, and the plaintiff is free to bring her state-law claims against the defendants in state court. If, however, the church-plan exception does not apply, this matter is governed by ERISA and any challenge regarding the defendants' denial of insurance benefits must be brought pursuant to ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B).

The undersigned begins by considering the undisputed facts concerning Roberts' insurance plan and then by examining the text of the church-plan exception. The defendants have provided the declaration of Katy Cecil, CHI Living Communities' ("CHILC") Director of Human Resources. [Record No. 1-6] Cecil states that CHILC is an Ohio non-profit corporation that engages in and promotes the delivery of health care services, particularly through establishing and operating hospitals, nursing homes, and living facilities for the elderly. Madonna Manor is one of CHILC's facilities, which provides independent living for older adults in Kentucky.

---

[1]     Roberts does not appear to dispute that the CHI Living Communities Employee Benefit Plan would be subject to ERISA absent application of the church-plan exception.

According to Cecil, CHILC established the CHI Living Communities Employee Benefit Plan ("the Plan"), effective July 1, 2016, to provide employee benefits, including life insurance benefits, to the employees of CHILC and its affiliates, including Madonna Manor. CHILC is the Plan Sponsor and has maintained the Plan and served as the Plan Administrator at all times since July 1, 2016. There is no benefit committee or other organization that has a principal purpose or function of administering the Plan.

"Church plans" are not subject to the provisions of ERISA. 29 U.S.C. § (b)(2). As the United States Supreme Court has explained, the statutory definition of "church plan" came about in two distinct phases. From its inception, ERISA provided that "[t]he term 'church plan' means a plan established and maintained . . . for its employees . . . by a church or by a convention or association of churches." *Advocate Health Care Network v. Stapleton*, 581 U.S. 468, 471 (2017) (quoting 29 U.S.C. § 1002(33)(A)). In 1980, Congress amended the statute by adding the following provision:

> A plan established and maintained for its employees . . . by a church or by a convention or association of churches includes a plan maintained by an organization . . . the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

*Id.* (quoting § 1002(33)(C)(i)). The Supreme Court explained that the text following "organization" is "just a (long-winded) description of a particular kind of church-associated entity" called a "principal-purpose organization." *Id.*

In determining whether the Plan constitutes an exempt "church plan," the starting point is the language of the statute. *See Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 433 (6th Cir. 2019). "Where the statute's language is clear and unambiguous and the statutory framework

is coherent and consistent, 'the sole function of the courts is to enforce it according to its terms.'" *Id.* (quoting *Hale v. Johnson*, 845 F.3d 224, 227 (6th Cir. 2016)).  However, the Sixth Circuit has cautioned against interpreting ERISA's language in a vacuum.  *Id.*  Instead, courts should look to the "structure, history, and purpose of the statutory scheme."  *Id.* (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)).

In *Stapleton*, the Court considered whether plans established by religious hospitals and maintained and/or administered by principal-purpose organizations were exempt under ERISA.  In concluding that they could be, the Court stated that § 1002(33)(C)(i) expands the types of plans covered under the exception by providing, essentially, that a church plan includes a plan "maintained by a principal-purpose organization."  Notably, the Court explained, the "church-establishment condition . . . drops out of the picture."  *Id.* 476.

Following the Court's decision in *Stapleton*, it is clear that two types of plans are exempt under § 1002(33)—plans established by a church or by a convention or association of churches and plans maintained by principal-purpose organizations.  *See Casto v. UNUM Life Ins. Co. of Am.*, 508 F. Supp. 3d 243 (E.D. Tenn. 2020).  In arguing that *all* church-affiliated organizations are exempt, Roberts focuses heavily on the following additional language that was part of the 1980 amendments:  an employee of a church includes "an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax under section 501 of title 26 and which is controlled by or associated with a church or a convention or association of churches."  § 1002(33)(C)(ii)(II).  However, if Congress intended to define "church" for purposes of § 1002(33)(A), the addition of § 1002(33)(C)(ii)(II) to the statute would have been an awfully roundabout way of doing so.

- 7 -

This Court agrees with the decision in *Casto*, which explained that the plaintiff's desired construction of the statute renders § 1002(33)(C)(i) superfluous.  As Madonna Manor points out, the petitioner hospitals' status as "church-affiliated" organizations in *Stapleton* was never at issue.  If such a church-affiliated entity satisfies the definition of "church" under § 1002(33)(A), then § 1002(33)(C)(i) would be unnecessary.  As stated in *Casto*, it is more likely that the definition in § 1002(33)(C)(ii) was added to describe who can benefit from a church plan.  *Id.  See also Del Sesto v. Prospect CharterCare, LLC*, 2022 WL 4182374, at *4 (D.R.I. Sept. 13, 2022) (observing that, "[f]or a plan which is not established and maintained directly by a church to nevertheless qualify as a church plan under ERISA, it must be maintained by what the Supreme Court has termed a "Principal Purpose Organization"").

While Roberts maintains that a principal-purpose organization is not necessary to the hospital's establishment of a "church-plan," the cases she cites in support ultimately are not persuasive.  First, *Friend v. Ancilla Systems Inc.*, 68 F. Supp. 3d 969 (N.D. Ill. 1999), concluded that a plan established and maintained by a non-profit hospital corporation was exempt from ERISA under § 1002(33)(C)(i).  The opinion, rendered well before *Stapleton*, provides that § 1002(33)(C)(i) "merely includes" principal-purpose plans and does not require church-affiliated organizations to use a third-party administrator.  *Id.* at 973.  However, *Stapleton* clarified that § 1002(33)(C)(i) omits the church-establishment requirement entirely and expanded the church-plan exception to include principal-purpose plans.  *See also Torres v. Bella Vista Hosp., Inc.*, 2009 WL 10717769, at *4-5 (D.P.R. Apr. 13, 2009) (relying on *Friend* without explanation).  *Welsh v. Ascension Health*, 2009 WL 1444431 (N.D. Fla. May 21, 2009), another pre-*Stapleton* case, is similarly unpersuasive.

The Court is likewise unpersuaded by the ultimate determination in *Cruz v. Standard Insurance Company*, 2: 21-CV-139-WOB. In *Cruz*, United States District Judge Bertelsman of this Court initially determined that the church-plan exception at issue in that case did not apply, that the Court had federal question jurisdiction, and that the case should not be remanded. [*Id.*, Record No. 12 (Jan. 11, 2022)] Then, following briefing regarding a motion for certification of an interlocutory appeal, Judge Bertelsman vacated his earlier opinion based on his conclusion that the exception *did* apply. [*Id.*, Record No. 16 (April 12, 2022)] In reaching this decision, he observed that the sponsor of the plan in issue, St. Elizabeth Medical Center, was a "non-profit Heathcare corporation . . . associated with the Catholic Church" which "will at all times uphold, embrace and be subject to the traditions, teachings and Canon Law of the Roman Catholic Church." And because of this connection, he concluded that St. Elizabeth "does not fall within the scope of ERISA, notwithstanding [that] it is not itself a church or association of churches nor a principal purpose organization." *Id.* Later, in response to a motion for reconsideration and to stay the April 12, 2022, decision, Judge Bertelsman further expanded his rationale for remanding the matter back to the Boone Circuit Court. [*Id.*, Record No. 24 (May 10, 2022)] In that order, he concluded that . . . "somewhat counterintuitively, the statutory definition of 'church or association of churches' includes entities which are not literally, in any way, a 'church or association of churches,' but may instead be church-affiliated non-profit corporations, such as a church-affiliated hospital network.'" *Id.* at 2 (citing *Stapleton*, 581 U.S. at 472).

The undersigned does not read *Stapleton* so broadly. As Judge Bertelsman noted, *Stapleton* states in dicta that the 1980 amendment "specified that for purposes of the church-plan definition, an 'employee of a church' would include an employee of a church-affiliated

- 9 -

organization."   581 U.S. at 472.   Still, the holding was limited: "a plan maintained by a principal-purpose organization . . . qualifies as a 'church plan,' regardless of who established it." *Id.* at 483-84.   There was no dispute in *Stapleton* that the hospitals were church-affiliated corporations, yet the Court did not consider whether the plans could constitute church plans under § 1002(33)(A).   *See id.* at 480 (observing that ERISA treats the terms "establish" and "maintain" interchangeably).

Roberts also makes a half-hearted argument that CHILC is a principal-purpose organization for purposes of the Plan.   [Record No. 16, p. 25]   The language of the exemption provides that a principal-purpose organization is an "organization" with the "principal purpose" or "function" of "administering" or "funding" a benefits plan.   § 1002(33)(C)(i).   She contends that administering the plan only must be one of the organization's functions—not the principal one.   But this argument is undercut by the plain language of the term "principal-purpose organization," as well as the persuasive authority that asks whether the relevant organization's "principal purpose" is administering or funding a plan for entity employees. *See e.g., Boden v. St. Elizabeth Med. Ctr, Inc.*, 404 F. Supp. 3d 1076, 1082 (E.D. Ky. 2019) (citing *Medina v. Catholic Health Initiatives (Medina I)*, 877 F.3d 1213, 1222 (10th Cir. 2017)).

Finally, Roberts argues that the defendants are judicially estopped from arguing that the church-plan exception does not apply because entities related to Madonna Manor took a contrary position in *Stapleton*.   [Record No. 16, p. 4]   But judicial estoppel clearly does not apply here for several reasons.   First, Roberts does not point to any instance in which *Madonna Manor* argued that the church-plan exception applied to it.   Further, even if Madonna Manor's parent companies were parties to *Stapleton*, there is no suggestion that the CHI Living

Communities Employee Benefit Plan was at issue in that case.  Moreover, "[j]udicial estoppel . . . does not usually apply to shifting legal arguments; it typically applies to shifting factual arguments."  *Arabian Motors Grp., W.L.L. v. Ford Motor Co.*, 228 F. Supp. 3d 797, 809 (E.D. Mich. 2017) (quoting *Law Office of John H. Eggertsen P.C. v. C.I.R.*, 800 F.3d 758, 766 (6th Cir. 2015)).

ERISA has a broad remedial purpose and its provisions should be read with that purpose in mind.  *Casto*, 508 F. Supp. 3d at 248 (citing *Rettig v. Pension Ben. Guar. Corp.*, 744 F.2d 133, 155 n. 54 (D.C. Cir. 1984)).  Therefore, exceptions should be construed narrowly to provide for broader ERISA coverage.  *See id.*; *Am. Progressive Life & Health Ins. Co. of N.Y. v. Corcoran*, 715 F.2d 784, 786 (2d Cir. 2983) (noting that the various exceptions to preemption are "meant to be 'narrow'").  Based on the foregoing, the Court concludes that the Plan, established and maintained by a church-affiliated hospital, is not subject to ERISA's church-plan exception.

**IV.**

Roberts' Complaint consists solely of state-law claims and, therefore, must be dismissed.  In her response to the defendants' motions to dismiss, Roberts requests leave to amend her Complaint in the event the defendants' motions are granted.  The defendants apparently agree with the request, as their proposed ordered would grant Roberts "leave to file an amended complaint setting out her ERISA claims consistent with the Federal Rules and Sixth Circuit precedent."  However, the plaintiff has neither filed a motion seeking leave to amend nor has she tendered a proposed amended complaint.  Granting the requested relief would leave this matter in the odd position of being without an operative pleading and thus without a claim over which this Court could exercise jurisdiction.  Accordingly, the matter will

be dismissed, without prejudice to Roberts' ability to file a new action asserting her claims under ERISA.

**V.**

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** as follows:

1.      The defendants' motions to dismiss [Record Nos. 8, 9] are **GRANTED**.

2.      The plaintiff's motion to remand [Record No. 10] is **DENIED**.

3.      This matter is **DISMISSED**, without prejudice, and **STRICKEN** from the docket.

Dated: December 20, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky